UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

WILLIAM PAPE and NANCY E. PAPE, individually and as natural guardians of REBECCA PAPE, and REBECCA PAPE,

Plaintiffs,

-against-

WAPPINGERS CENTRAL SCHOOL DISTRICT; JOSEPH CORRIGAN, individually and as Assistant Superintendent for Administration of the Wappingers Central School District; NEW YORK STATE EDUCATION DEPARTMENT; and RICHARD P. MILLS, individually and as Commissioner of the New York State Education Department,

Defendants.

---------------------------------------x

**CASE NO.: 07cv8828 (HB)**

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiffs William Pape and Nancy E. Pape, suing individually and as natural guardians of their now grown daughter, Rebecca, a twenty-three-year old woman, allege that defendants Wappingers Central School District, Joseph Corrigan, New York State Education Department, and Richard P. Mills violated plaintiffs' rights under the Individuals with Disabilities Education Act (hereafter "IDEA"), 20 U.S.C. §1400 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.; the Due Process and Equal

Protection Clauses of the Fourteenth Amendment; and 42 U.S.C. §1983 (hereafter §1983").

I. PRELIMINARY STATEMENT

1. Plaintiffs William and Nancy Pape (hereafter "the Papes") and Rebecca Pape (hereafter "Rebecca) bring this §1983 claim against the Wappingers Central School District (hereafter "the School District"), Joseph Corrigan (hereafter "Corrigan"), individually and in his official capacity as Assistant Superintendent of the School District, the New York State Education Department (hereafter "SED"), and Richard P. Mills (hereafter "Mills"), individually and in his official capacity as the Commissioner of SED.

2. Plaintiffs allege, inter alia, the following causes of action: (1) retaliation based on plaintiffs' request for an impartial due process hearing under §1415 of the IDEA, and for prevailing at the administrative hearing under the IDEA; (2) a continuing discrimination against Rebecca on the basis of her disabilities in violation of Section 504 by denying her a free appropriate public education (hereafter "FAPE") and reasonable accommodations; (3) a continuing discrimination against Rebecca on the basis of her disabilities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq.

(hereafter "ADA") by denying her a meaningful access to her special education program and denying her a FAPE by refusing to implement her Individualized Education Program (hereafter "IEP") and by exclusion (cutting off of funds from her special education program during her then pendant placement); (4) depriving her of the right to an education in violation of the substantive rights under the Due Process Clause of the Fourteenth Amendment; (5) depriving plaintiffs of their substantive right to the procedural protections of the IDEA in violation of the Equal Protection Clause of the Fourteenth Amendment; and (6) depriving plaintiffs of their rights under federal statutes in violation of §1983.

3. Plaintiffs seek declaratory judgments against SED and the School District; compensatory damages from the SED and the School District for the denial of their substantive and procedural due process rights. In addition, plaintiffs seek a punitive damages award against Corrigan and Mills, individually, because they acted with reckless or callous indifference to plaintiffs' federally protected rights.

## II. JURISDICTION AND VENUE

4. Jurisdiction over the plaintiffs' claims is conferred on this Court by 28 U.S.C, §1331 and 28 U.S.C. §§1343(a)(3) and (a)(4).

5. This Court has subject matter jurisdiction because the plaintiffs exhausted their administrative remedies under the IDEA by obtaining an administrative decision from an Impartial Hearing Officer (hereafter "IHO") in their favor under 20 U.S.C. §1415 of the IDEA on October 12, 2004.

6. The Papes appealed to the State Review Officer (hereafter "SRO") on or about November 16, 2006 seeking enforcement of the IHO's decision of October 12. The School District's deliberate indifference to the IHO's order regarding Rebecca's clearly established statutory rights to transitional services, vocational assessments and psychiatric evaluations under the IDEA, Section 504 and the ADA was a clear violation of §1983.

7. On December 8, 2006, the SRO, in dismissing the Papes' appeal, stated among other things that "because the October 12, 2004 [IHO] decision was favorable to petitioners [the Papes], petitioners need not exhaust administrative remedies prior to bringing an action in court."

8. Declaratory, compensatory and punitive damages, are sought pursuant to 28 U.S.C. §2201 and §1983, respectively, to redress the deprivation, under color of

state law, of plaintiffs' rights, privileges, or immunities secured by the Constitution and laws of the United States.

9. Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

10. Venue is proper under 28 U.S.C. §1391, as acts and conduct forming the subject matter of this Complaint have occurred and are occurring in this District.

III. PARTIES

11. The Papes and Rebecca are residents of 1 Swenson Drive, Wappingers Falls, New York 12538, at Dutchess County, New York.

12. The School District is the local public educational agency serving Wappingers Falls, New York, at Dutchess County, New York, the district in which the plaintiffs reside.

13. Defendant Corrigan is an Assistant Superintendent for Administration of the School District and maintains his offices at the School District's administrative offices at 15 Myers Corners Road, Wappingers Falls, NY 12590 at Dutchess County, New York.

14. Defendant New York State Education Department (hereafter "SED") is a state educational agency within the meaning of 20 U.S.C. §1401 of the IDEA and maintains its

offices at 89 Washington Avenue, Albany, New York, at Albany County, New York.

15. Defendant Mills maintains his administrative offices at SED, 89 Washington Avenue, Albany, New York 12205.

IV. STATEMENT OF FACTS

16. The School District is obligated to ensure that it establishes, maintains and implements procedural safeguards that meet the requirements of §1415 of the IDEA and Section 504 because it receives federal money.

17. The SED is obligated to ensure that the state's local educational agencies such as the School District, establishes, maintains and implements procedural safeguards that meet the requirements of §1415 of the IDEA and Section 504 because it receives federal money.

18. Corrigan is liable for failing his discretionary duties in regard to the training and supervising of the School District's employees to ensure that the School District is in compliance with federal and state laws governing the education of its students with disabilities.

19. Corrigan is sued individually and in his official capacity as the supervisor and policy maker for the School District's special education program.

20. Corrigan made the School District's special education program's policies which were routinely adopted by the School District's Board of Education.

21. The School District's deliberate indifference to the clearly established statutory rights of the plaintiffs and reckless disregard for the procedural safeguards of the IDEA is directly attributable to the unlawful customs, policies and practices that Corrigan himself established for the district.

22. Corrigan was and is personally responsible for all of the injuries inflicted upon the plaintiffs, and Rebecca in particular, in this case. For this reason, Corrigan is sued individually and in his official capacity.

23. Rebecca was born on December 16, 1983, and was enrolled in the School District as a regular student in the district until she started experiencing major health problems in 1997, which impaired her ability to attend classes at her public school.

24. On or about March 19, 1997, Rebecca became under the care of Dr. Howard E. Bostwick of the New York Medical College at Valhalia, New York, for her problems of chronic abdominal pain and gastritis.

25. On or about March 1997, the Papes provided a copy of Dr. Bostwick's letter to the School District expecting

that the district would make a referral of Rebecca to its Committee on Special Education (hereafter "CSE") for an evaluation pursuant to the mandated requirements under §1415 of the IDEA.

26. On or about March 1997, the School District violated the procedural safeguards of the IDEA by failing or refusing to make a referral of Rebecca to its CSE or inform the Papes of their procedural rights under §1415 of the IDEA.

27. On or about March 1997, the School District violated Section 504 and the ADA by failing or refusing to make a referral of Rebecca to its CSE for free comprehensive evaluations of her known and suspected handicapping conditions as required by §1415 of the IDEA.

28. Since March 1997 until the present time, the School District has failed or refused to properly and timely evaluate Rebecca pursuant to the procedural safeguards of the IDEA in order to prevent her from receiving a FAPE in the least restrictive environment (hereafter "LRE") under the IDEA.

29. During the 1997 school year, Rebecca suffered from severe migraine headaches. She felt too ill to attend school. The School District refused to accept doctors'

notes from Rebecca's treating physicians which the Papes submitted to the School District.

30. At that time, the School District falsely accused the Papes of child neglect and blamed them for Rebecca's "excessive absences" from school

31. The School District's denial of a referral to its CSE for timely evaluations of Rebecca under the IDEA regarding her medically related absences from school resulted in discrimination against Rebecca on the basis of disability under Section 504 and the ADA.

32. Rebecca's absences from school were due to a disability under Section 504 and the ADA because her poor health substantially limited one or more of Rebecca's major life activities such as attending school and learning.

33. Corrigan's failure to supervise and train the School District's officials in the correct application of the procedural safeguards of §1415 of the IDEA caused the plaintiffs to be severely punished for her disability related absences from school.

34. Instead of making a referral to the School District's CSE in order to perform evaluations of Rebecca's known and suspected handicapping conditions, as required by the §1415 of the IDEA and Section 504, the School District

filed a Person in Need of Supervision (hereafter "PINS") petition against the Papes for child neglect and truancy With the Dutchess County Department of Social Services (hereafter "DSS"), Child Protective Services (hereafter "CPS") unit for child neglect.

35. The School District's officials told CPS monstrous lies about the plaintiffs in order to in order to harass and intimidate the Papes. The big lies worked because CPS started to investigate the Papes for child neglect. The CPS sent investigators to the Papes' residence to see if cause existed to remove Rebecca from their custody.

36. The Papes and Rebecca suffered severe mental anguish and humiliation when they saw the CPS worker come to their home to discuss the removal of Rebecca from their home because of the School District's false child neglect charges.

37. Even worse, the School District intentionally defamed the plaintiffs, under color of state law, with the evil motive of harassing and intimidating the Papes to prevent them from pursuing their administrative remedies under §1415 of the IDEA.

38. The School District's discriminatory and unlawful actions against the Papes deprived Rebecca of reasonable

accommodations for her disabilities, a violation of Section 504 and the ADA.

39. On or about the Spring of 1997, a Dutchess County social worker visited the Papes' residence and saw Rebecca's doctors' notes and was convinced that the Papes were innocent of the child neglect charges made by the School District. The social worker found that there was no basis for the PINS petition.

40. On or about September 1997, Rolando Orlando, another CPS worker from DSS visited the Papes' home to show them documents which indicated that the School District had filed a second PINS petition with the Family Court alleging that the Papes were guilty of child neglect and truancy for "excessive absences."

41. The Papes continued to show the School District doctors' notes as proof that the child neglect and truancy charges were unfounded to no avail.

42. On or about September 1997, the School District continued to discriminate against Rebecca on the basis of disability by disregarding the Papes' proof of their daughter's disability in violation of the plaintiffs' rights under Section 504 and the ADA.

43. On March 6, 1998, the Papes received a summons to appear before a Family Court judge on the educational

neglect charges. The court ordered the Papes to appear for a trial on March 9, 1998, and ordered Rebecca to attend school on that date.

44. On or about March 9, 1998, Rebecca failed to attend school because the Papes had to rush her to Vassar Brothers Hospital's Emergency Room because she was incapacitated due to a severe migraine headache. A shot was administered to Rebecca and she promptly fell asleep. She had a doctor's note to prove that she was too ill to attend school that day.

45. On or about March 9, 1998, the Papes went before the Family Court pursuant to the court's order of March 6 early that afternoon to explain the reasons for Rebecca's absence from school that day. The Papes had medical proof showing why Rebecca was unable to attend school that day. The court still ordered CPS to remove Rebecca from their home later that afternoon.

46. At that time, the Papes' recommended that they plead guilty to a child neglect charge lest they lose custody of Rebecca forever. The Papes were fearful of losing Rebecca that they agreed to plead guilty of all charges against them.

47. On or about March 9, 1998, two CPS workers and two armed officers from the Poughkeepsie Police Department

arrived at the Papes' residence in the late afternoon to remove Rebecca from her parents' custody. Rebecca was allowed to pack only one suitcase of clothes and a few personal items to bring with her to an unknown foster home.

48. The Papes were not told where CPS and the police officers were taking Rebecca. It was an extremely stressful and traumatizing situation for the Papes. Rebecca will be forever scarred by the disability based discrimination against her which was caused by the School District's reckless disregard of her statutory and constitutional rights.

49. At that time, Rebecca's placement in a court ordered foster home proved to be inappropriate because her new foster parent would constantly shout at her. Rebecca tried to escape from the foster home because she could no longer take the foster parent's abusive treatment of her.

50. The hostile environment at the foster home made Rebecca so emotionally and physically ill that she had to be rushed to the emergency room in an ambulance to the Vassar Brothers Hospital at Poughkeepsie, New York.

51. At that time, Rebecca was released to CPS after spending three days at the hospital. CPS took custody of Rebecca and removed her from the hostile environment of the

foster home. CPS promptly placed Rebecca in a different foster home.

52. The School District's incompetence and negligence caused Rebecca to suffer discrimination at the hands of CPS and the Family Court because it concealed the fact that it never evaluated Rebecca to determine the underlying medical reasons for her absences from school. If the district had evaluated Rebecca as it was mandated to under §1415 of the IDEA, she would have spared of the ordeal that she went through with the police, the Family Court, the inappropriate foster homes and the wrenching separation from her loving parents.

53. Now Rebecca and the Papes have a record with CPS and the Family Court which will stigmatize them forever as parents who were found guilty of child neglect.

54. CPS and the Family Court's failure were directly attributable to the School District and Corrigan's outrageous and unlawful actions.

55. The School District and Corrigan's failure to act as a reasonable and competent school district administrator and supervisor caused Rebecca to lose years of valuable school time in inappropriate placements that she will never recover because of her age.

56. A reasonably competent school district's administrator and supervisor would have evaluated Rebecca and provided reasonable accommodations for her after classifying her as disabled (other health impaired) in 1997 under the IDEA. That would have been the appropriate thing to do instead of filing a PINS petition against her parents to CPS at the first instant.

57. During most of 1998, the Papes continued to deal with CPS and the Family Court trying to obtain custody of Rebecca and bring her home only way to prevent losing custody of Rebecca forever.

58. On or about February 25, 1999, the School District's CSE gave a written notice to the Papes informing them that the "CSE does not recommend classification at this time" and that the "CSE recommends a referral to the 504 Committee. The 504 Committee should review medical documents supplied by parents

59. On or about April 12, 1999, Robert Irish, Assistant Principal of the School District wrote a memorandum to Corrigan advising him that "Pursuant to assessment/evaluation of Rebecca Pape, it has been determined that she is entitled to 'reasonable accommodations' in fulfillment of federal regulation under Section 504 of the Rehabilitation Act of 1973" and that he

(Corrigan) "implement these accommodations so that [Rebecca] may deprive full benefit from the instruction provided."

60. On or about April 1999, Corrigan became personally involved with Rebecca when he received the April 12 memo from Mr. Robert Irish of the School District. There can be no pretending on his part that he was not personally involved with Rebecca's case because school officials reported directly to him concerning her need for reasonable accommodations.

61. Unfortunately for Rebecca and the Papes, this was only a ploy on Corrigan's part to cover up his part in the School District's gross procedural violations of a disabled child's rights under the IDEA, and discrimination based on disability under Section 504 and the ADA.

62. On or about April 1999, the Papes satisfied the Family Court and CPS with their "cooperation" and returned Rebecca to her parents' custody.

63. The School District's April 1999 memorandum to Corrigan regarding "reasonable accommodations" for Rebecca were an outrageous farce because there was never any compliance with the procedural safeguards of §1415 of the IDEA. The School District only pretended that it was going

to evaluate Rebecca in order to pacify the Papes and make them go away.

64. In April 1999, the Papes became aware that the School District's phony Section 504 plan for Rebecca completely failed to address her individualized needs for reasonable accommodations which would give her meaningful access to her special education needs such as the need for transitional services and further evaluations. It became clear to the Papes that this Section 504 plan for Rebecca was simply a ploy that the School District and Corrigan used to avoid classifying their daughter as disabled for its special education program.

65. In the Fall of 1999, Rebecca was receiving treatment for emotional problems including self-mutilation. The Papes once again sought a referral of Rebecca to the CSE for evaluations and classification for the School District's special education program to no avail. The Papes' requests were repeatedly denied but still they did not receive any notice of their due process rights.

66. On or about November 16, 1999, the School District's Guidance Counselor, Roger Higgins, wrote to the Papes to inform them that "as per district policy, it will be necessary to drop Rebecca from her honors Social Studies and honors Biology classes" due to her failing both

courses. Higgins also informed the Papes that Rebecca that "it has become necessary to drop Becky from her chorus class due to her absences. Clearly, this was evidence of Rebecca's regression due to the School District's failure to provide her with a FAPE.

67. On or about November 30, 1999, the School District gave a written notice to the Papes informing them the reason for its refusal to classify Rebecca at that time was "because of lack of sufficient documentation."

68. On or about December 7, 1999, the School District's CSE finally classified Rebecca "as [a] student with Emotional Disturbance and made her eligible for its special education program.

69. On or about March 20, 2002, the CSE developed an Individualized Educational Program (hereafter "IEP") for Rebecca for the school years 2002-2003, her last year in high school. The School District and the Papes agreed that Rebecca would be placed in Summit School, a state approved, private residential school at Upper Nyack, New York, for the school years 2002-2003.

70. On or about March 2003, the Papes requested an impartial hearing under the IDEA because the School District failed to provide Rebecca with transitional services, psychiatric counseling, vocational assessments

and other services in order to prepare her for college and work after graduation. The School District refused the Papes' request and told the Papes such services were not necessary or required.

71. The defendants' unlawful refusals to include in Rebecca's IEP the provision of transitional services, a psychiatric evaluation, and vocational assessments effectively deprived her of a meaningful access to college, work, and independent living skills after graduation from high school.

72. The School District effectively deprived Rebecca of the benefits of her special education program to which she entitled under the IDEA in violation of Section 504 and the ADA.

73. After the Papes requested an impartial due process hearing pursuant to the IDEA, the School District retaliated against them by aging Rebecca out of its special education program by graduating her from high school, and terminating all services to which she was entitled under the IDEA before she became 21 years old.

74. On or about June 2003, the School District, acting is bad faith or gross misjudgment, altered her then pendant placement at the Summit School by graduating Rebecca without an agreement with the Papes when she was

only 19 years. Under the IDEA, Rebecca was eligible to receive special education and related services until she was 21 years old, even if she graduated student from high school.

75. On or about June 2003, the School District unlawfully excluded Rebecca from its special education program by cutting off her funding for her special education program in violation of Section 504 and the ADA.

76. By depriving Rebecca of a FAPE and reasonable accommodations for her disability during her final year of high school, the School District's actions were arbitrary and capricious in violation of her substantive rights under due process clause of the Constitution.

77. Exhaustion of administrative remedies proved to be futile for the Papes in this case because Corrigan, the School District, the SED and Mills completely ignored the IHO's decision of October 12, 2000 and order requiring the School District to provide, inter alia, transitional services and certain critical services which Rebecca desperately needed to address substantial barriers posed by her disability to future success in college and her career goals.

78. Without the necessary psychiatric evaluations and counseling services, Rebecca was doomed to fail in college

and she did. She enrolled at Cobbleskill, State University of New York in the Fall semester of 2005 and dropped out after attending college for only three weeks.

79. Rebecca is presently living with her parents because she lacks independent living skills. She works at night on a part-time basis because she cannot work during the day with people around her. She has suffered diminished earnings because of the School District's failure to provide her with the necessary survival skills that she requires.

80. As time goes by, Rebecca will suffer further regression because of the defendants' unlawful actions against her. Rebecca is presently 23 years old and has long since graduated from high school and as stated above dropped out of college after attending classes at the university for only three weeks. She has been struggling for some four years while suffering the effects of the School District's refusals to address Rebecca's severe disability related needs.

81. Rebecca's hopes of working as a health care professional were shattered by the defendants. Without a college degree, Rebecca's dream of working and living independently are ruined. She now with her parents because her disability prevents her from holding a full-time job.

82. Rebecca stays mainly to herself. She suffers mental anguish and humiliation because of the discrimination she has suffered.

83. Compensatory education will not be an adequate or sufficient remedy to make Rebecca whole for the irreparable harm done to her family and herself. The entire Pape family is entitled to be made whole by way of monetary damages to redress the great injustice that has been done to them by the School District and the SED.

84. The plaintiffs have not received a single remedy for the continuing violations of their civil rights. To date, the School District has refused to comply with the IHO's order of October 12, 2004.

85. The plaintiffs' seek compensatory and punitive damages as a remedy for the gross procedural violations suffered by them at the hands of defendants. In addition, plaintiffs seek declaratory and equitable relief as well as attorney's fees and costs under the IDEA, §504, ADA, and under Section 1983. In addition, plaintiffs are entitled to attorney's fees and costs for prevailing at their due process hearing under the IDEA.

## V. CLAIMS

### FIRST CLAIM: RETALIATION CLAIM UNDER THE ADA, SECTION 504 AND §1983

86. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 85 of the complaint.

87. After the Papes invoked the due process hearing procedures of the IDEA to enforce their rights under the IDEA and Section 504, the School District retaliated against the plaintiffs by (1) unilaterally graduating Rebecca from Summit School, a change in her pendent placement, prohibited under §1415(j) of the IDEA; (2) by cutting off public funds for her special education program (IEP), a unilateral change in placement, prohibited by §1415(j) of the IDEA; and (3) by ignoring the IHO decision dated October 12, 2004 which ordered the School District to provide Rebecca with the following: (1) a new CSE meeting to create a new plan for transition services; (2) plan a psychiatric evaluation; (3) plan a vocational assessment; (4) consider employment strategies; (5) plan educational strategies; and (6) plan counseling strategies.

As a result of the School District's retaliatory actions against the plaintiffs, Rebecca was deprived of a FAPE and suffered discrimination due to her disability, and retaliation against the Papes.

SECOND CLAIM: Violation of IDEA and §1983

88. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 87 of the complaint.

89. By flouting the procedural guarantees of the IDEA, Corrigan personally established an unlawful custom and practice by requiring and allowing the School District's special education professionals to ignore the procedural safeguards of 20 U.S.C. §1415 in violation of §1983.

THIRD CLAIM: LIABILITY OF THE STATE EDUCATION DEPARTMENT FOR DISCRIMINATION AGAINST REBECCA ON THE BASIS OF DISABILITY UNDER THE ADA AND SECTION 504

90. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 89 of the complaint.

91. By depriving Rebecca of a FAPE, SED discriminated against Rebecca on the basis of her disability in violation of Section 504, the ADA and §1983.

FOURTH CLAIM: THE SCHOOL DISTRICT 'S DECISION TO CUT OFF PUBLIC FUNDS FOR REBECCA'S PLACEMENT AT SUMMIT SCHOOL BEFORE SHE BECAME 21 YEARS OLD RESULTED IN ISCRIMINATING AGAINST REBECCA ON THE BASIS OF DISABILITY

92. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 91 of the complaint.

93. By cutting off funds for Rebecca's special education program before she became 21 years old, resulted in exclusion from special education in violation of Section 504, the ADA and §1983.

FIFTH CLAIM: THE SCHOOL DISTRICT'S DECISION TO GRADUATE

AND CUT OFF PUBLIC FUNDS FOR REBECCA'S PLACEMENT AT SUMMIT SCHOOL DURING THE PENDENCY OF STATE ADMINISTRATIVE PROCEEDINGS WAS ARBITRARY AND CAPRICIOUS

94. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 93 of the complaint.

95. As a result of the School District's arbitrary and capricious decision to graduate and cut off federal funds for Rebecca's placement at Summit School during the then pendent placement during her due process hearing in violation of §1415(j) of the IDEA, caused plaintiffs to suffer a deprivation of due process and equal protection under the Fourteenth Amendment and §1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray that the Court:

1. Assume jurisdiction over this matter;

2. Issue declaratory judgments pursuant to Rule 57 of the Federal Rules of Civil Procedure as follows:

a. that defendants School District, Corrigan, SED, and Mills violated Section 504, the ADA, and §1983 by retaliating against plaintiffs for engaging in protected activities under §1415 of the IDEA;

b. that defendants unlawfully excluding Rebecca Pape from a program or activity solely by reason of her handicap, and that the program or activity receives federal financial assistance;

c. that plaintiffs may bring this §1983 action against defendants School District, Corrigan, SED, and Mills to enforce the violations of plaintiffs' and Rebecca's rights under Section 504 and the ADA;

d. that the School District is liable for violating the anti-retaliation provision of Section 504 by deliberately and recklessly disregarding the clearly established procedural guarantees of the IDEA after the Papes and Rebecca requested an impartial due process hearing to enforce their rights under Section 1415 of the IDEA;

e. that the School District violated Rebecca's then pendent placement under the IDEA by graduating her and by terminating all special education and related services to Rebecca which she was entitled before the requested impartial hearing was concluded;

f. that Rebecca was entitled to compensatory education under the IDEA notwithstanding her graduation from high school;

g. that the School District was obligated under the IDEA and Section 504 to comply with the IHO's order to provide Rebecca with transitional services, a psychiatric evaluation, vocational assessments, and counseling services despite Rebecca's age because she was unlawfully deprived of such special education and related services during her then pendent placement;

h. that the School District, Corrigan, SED, and Mills are liable under Section 1983 for violating Section 504 and the ADA because of their failure to supervise and train the School District and their agents and employees on their obligations under the IDEA, Section 504 and the ADA.

i. that plaintiffs exhausted their administrative remedies under the IDEA, and have a right to bring this §1983 action against the defendants;

j. that defendants Corrigan and Mills are liable for violating the Papes and Rebecca's clearly established statutory rights under the IDEA, Section 504 and the ADA;

k. that the School District's deliberate indifference to pervasive, severe disability based harassment that effectively deprived Rebecca, a disabled student of access to the School District's resources is actionable under Section 504, the ADA, and §1983;

l. that Corrigan is not qualifiedly immune from §1983 claims because his conduct in this case violated clearly established statutory rights and it was not objectively reasonable for his to believe that his conduct did not violate the plaintiffs' clearly established statutory rights;

m. that Corrigan and School District officials acted in bad faith or gross misjudgment in altering the conditions of Rebecca's high school experience that she felt that she could not attend her graduation ceremony;

n. that defendants are liable to Rebecca for violating her right to receive an enforceable administrative decision under the IDEA;

o. that defendants violated plaintiffs' rights to due process and equal protection under the law by flouting and totally ignoring and undermining:

i. the due process guarantees under the IDEA by ignoring the 45-day rule for convening due process hearings, and decisions;

ii. the pendent placement rule by changing Rebecca's then pendent placement by graduating her without a prior agreement between the parties to change her placement;

iii. the cutting off of funds for Rebecca's special education program when she graduated without a prior agreement to change her pendent placement involved the total exclusion of her under Section 504 and the ADA;

iv. the School District's disregard of the IHO's decision and order;

i. deprived plaintiffs of their right to a meaningful remedy after exhausting their administrative remedies under the IDEA.

iv. that judgment be entered against defendants jointly and severally, for general and specific compensatory damages in the sum of Ten Million Dollars ($10,000,000.00),

v. Award the plaintiffs punitive damages in the amounts of $4,000,000.00, respectively, against defendants Corrigan, and Mills for inflicting mental anguish, humiliation on plaintiffs and deprivation of their constitutional rights.

vi. Award costs, disbursements and reasonable attorney's fees.

vi. Grant such other and further relief as the Court may deem just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL

Dated: Bronx, New York
October 12, 2007

Respectfully submitted,

Ben M. Arai (BA-1969)
Attorney for Plaintiffs
1175 Forest Avenue, Suite 3
Bronx, NY 10456
(718)378-6527