RECEIVED JUN 3 0 2008 USDC-WP-SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
WILLIAM PAPE and NANCY E. PAPE
individually and as natural
guardians of REBECCA PAPE, and REBECCA
PAPE, individually,

                     Plaintiffs,

               -against-

THE BOARD OF EDUCATION OF THE WAPPINGERS
CENTRAL SCHOOL DISTRICT and RICHARD A.
POWELL, individually and as Superintendent
of the Wappingers Central School District;

                     Defendants.
------------------------------------------X

CASE NO.:
07cv8828 **(KMK)**

**PLAINTIFFS'
SECOND AMENDED
COMPLAINT**

JURY TRIAL
DEMANDED

I.    PRELIMINARY STATEMENT

1.    Plaintiffs Rebecca Pape (hereafter "Rebecca") and her parents, William Pape and Nancy E. Pape (hereafter "the Papes"), bring this action against the Board of Education of the Wappingers Central School District (hereafter the "School District", and Richard A. Powell (hereafter "Mr. Powell"), the Superintendent of the Wappingers Central School District, alleging, inter alia, that the defendants retaliated against the plaintiffs for enforcing Rebecca's rights under the Individuals with Disabilities Educations Act ("IDEA"), 20 U.S.C. §§ 1400 et seq.; the Rehabilitation Act of 1973 ("§ 504), 20 U.S.C. § 794 et seq.; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Due Process and Equal Amendment Clauses of the Fourteenth Amendment and 42 U.S.C. § 1983.

2.  Plaintiffs request that the Court grant judgment declaring that the defendants' reckless disregard of the plaintiffs' clearly established rights under the mandatory procedural provisions of § 1415 of the IDEA constituted retaliation, which is prohibited by the Rehabilitation Act, 34 C.F.R. § 100.7(e); and for those reasons, plaintiffs are entitled to monetary relief, including punitive damages only from the individual defendant, Mr. Powell, under § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

II. <u>JURISDICTION AND VENUE</u>

3.  Jurisdiction over the plaintiffs' claims is conferred on this Court by 29 U.S.C. § 794(e), 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3) and (a)(4).

4.  This Court has subject matter jurisdiction because the plaintiffs have exhausted their administrative remedies under 20 U.S.C. § 1415 of the IDEA.

5.  Declaratory and monetary relief are sought under 28 U.S.C. §§ 2201 and 2202, and § 1983 respectively, to redress the deprivation, under color of state law, of plaintiffs' rights, privileges, or immunities secured by the constitution and laws of the United States.

6.  Plaintiffs' request for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

7.  Venue is proper under 28 U.S.C. § 1391 as the acts and conduct forming the subject matter of this second amended Complaint have occurred and are occurring in this District.

III. PARTIES

8.  Plaintiffs William Pape, Nancy E. Pape, and Rebecca Pape are citizens of the United States and are residents of Wappingers Falls, New York.

9.  Defendant Board of Education of the Wappingers Central School District ("the School District" or "Board of Education") is the local public agency serving the area in which the plaintiffs live.

10. The School District receives federal financial assistance.

11. The School District's offices are located at 167 Myers Corners Road, Suite 200, Wappingers Falls, New York 12590.

12. Defendant Richard A. Powell ("Mr. Powell"), as Superintendent of Schools, is the chief executive officer of the Board of Education. Mr. Powell is authorized by the Board of

Education's official written policy to "ensure compliance with all laws and regulations that affect the school district."

13. The Board of Education's official policy also makes it clear that Mr. Powell is responsible for "the execution, administration and enforcement of all policies of the district." The policy also authorizes Mr. Powell "to report to and be accountable to the Board of Education and not any officer, committee or individual member of the Board in fulfilling his responsibilities."

IV. STATEMENT OF FACTS

14. On March 27, 2003, the Papes attempted to enforce their rights under the IDEA by serving upon the School District's administrative offices a written complaint listing all of their grievances against the School District's special education department.

15. The Papes were aggrieved parents within the meaning of § 1415 of the IDEA because of the School District's failure or refusal to fully implement Rebecca's then current Individualized Education Program ("I.E.P") for the 2002-2003 school years.

16. Mr. Powell was the Superintendent of the School District during all of the relevant time periods of this complaint. The Board of Education had previously appointed Mr.

Powell to be the Superintendent for the School District on or about May 21, 2001. Hence, he was and is the school official individually responsible for all of the violations of the plaintiffs' rights in this action.

17. On June 2003, the defendants discriminated against the plaintiffs by retaliating against them "for the purpose of interfering with protected rights under the Rehabilitation Act, 34 C.F.R. § 100.7(e). The School District retaliated against the plaintiffs by unilaterally graduating Rebecca from her then pendent placement at Summit School, and by cutting off funding for her special education program immediately after graduating from Summit School.

18. Defendants were motivated to retaliate against the plaintiffs because they have a history of due process hearings dealing with the School District's constant refusal to address Rebecca's emotional issues since 1998.

19. The plaintiffs requested a due process hearing on January 2000 and became the prevailing party in October 2002 when the hearing officer found that the defendants had denied Rebecca a free appropriate public education at that time. Plaintiffs did not file an action at that time.

20. Since the years 2000 to 2003, the School District has lost two administrative due process hearings to the plaintiffs. The disgrace of losing hearings to the plaintiffs provided a strong motive for the defendants to retaliate against the plaintiffs; otherwise, it does not make any sense for the Superintendent to flout the clearly established procedural guarantees of § 1415 of the IDEA.

21. Reasonable Superintendents would have known about the clearly established procedural safeguards of § 1415 and would have complied with their obligations as recipients of federal funds.

22. Instead, Mr. Powell acted in bad faith and used gross misjudgment to disregard the mandatory provisions of § 1415 which provided procedural safeguards for disabled children. He should have known that disregarding the plaintiffs' due process rights in such a blatant manner would constitute discrimination against a qualified disabled student such as Rebecca.

23. Rebecca suffered unlawful exclusion when the School District cut off funds for her special education program. The defendants violated §§ 504 and the ADA by denying Rebecca reasonable accommodations and meaningful access to the School District's special education program.

24. The defendants knew or should have known that Rebecca's disabling emotional disturbance would lead her to failure after graduation because of the School District's failure to address her disability related issues.

25. On December 30, 2003, the impartial hearing officer ("IHO") commenced the due process hearing pursuant to the plaintiffs' request of March 29, 2003.

26. The School District's violation of the IDEA's mandatory 45-day rule for rendering a decision in the hearing caused Rebecca's due process rights to remain indefinitely in an administrative limbo.

27. On October 12, 2004, the IHO, upon reviewing her entire school record, rendered his decision in the matter finding that the School District did not provide Rebecca the necessary psychiatric evaluation, psychological and vocational counseling, and transitional services which she would have prepared her to be self sufficient and would have provided her with the independent life skills necessary for her survival in a higher education environment.

28. On October 12, 2004, the IHO ordered the School District to provide the above services to Rebecca. To date, the defendants have disregarded the IHO's order.

29. Rebecca is now a 24-year-old woman who has long graduated from Summit School (hereafter "Summit"). Her last and pendency placement under 20 U.S.C. § 1415(j) of the IDEA was at Summit School.

30. On or about November 16, 2006 Plaintiffs appeal to the State Review Officer ("SRO") seeking the enforcement of the IHO's order of October 12, 2004.

31. On December 8, 2006 the SRO found, inter alia, that "because the October 12, 2004[IHO] decision was favorable to [the Papes], they need not exhaust their administrative remedies prior to bring an action in court.

32. Plaintiffs are not appealing the SRO's decision of December 8, 2006. Instead they have decided to bring a civil rights action under § 504, the ADA, the Fourteenth Amendment and § 1983 against the defendants based on violations of Plaintiffs' clearly established rights under § 1415 of the IDEA.

33. Plaintiffs have never waived their due process rights under § 1415 of the IDEA. To this date the Plaintiffs have not received a meaningful due process remedy from the defendants.

34. Rebecca is a qualified individual with disabilities within the meaning of § 504 and the ADA because her disability caused her to be classified "as [a] student with Emotional

Disturbance" which substantially impaired her ability to attend a regular high school program.

V.  LEGAL CLAIMS

35.  The Board of Education and Mr. Powell received the plaintiffs' request for a due process hearing, but failed to appoint a hearing officer in order to commence a timely hearing pursuant to the mandatory provisions of § 1415 of the IDEA.

36.  Defendants violated the mandatory IDEA regulation 34 C.F.R. § 300.511(a)(1) which requires the impartial hearing officer to render his or her decision in the hearing no later than 45 days after receipt by the Board of Education of a request for a hearing.

37.  Defendants acted with the purpose of interfering with plaintiffs' protected rights to enforce their rights under § 1415 of the IDEA by sitting on their request for a due process hearing.

38.  Defendants retaliated against the plaintiffs by deliberately disregarding the mandatory stay-put provision of 20 U.S.C. § 1415(j) of the IDEA.

39.  Defendants unilaterally and unlawfully changed Rebecca's pendency placement by graduating her from Summit School on June 2003, and by simultaneously cutting off funding

9

for her special education services during the pendency of plaintiffs' hearing in violation of 20 U.S.C. § 1415(j).

40. Defendants' denial of transitional and other disability related services demonstrated that defendants' goal was to age Rebecca out of the system and shift the burden of paying for a psychiatric evaluation, psychological and vocational counseling and transitional services from the defendants to the plaintiffs.

41. Defendants violated § 504 and the ADA by refusing to pay for Rebecca's psychiatric evaluation, psychological and vocational counseling services and transitional services. constituted violations of § 504 and the ADA's requirement that the School District is obligated to make reasonable accommodations or meaningful modifications of its programs to qualified disabled children who are classified as disabled by the school district CSE. The IDEA mandated school district to provide a free appropriate public education to Rebecca until she became 21 years old. Instead Defendants directed plaintiffs to go to the State Education Department Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") after graduating Rebecca from Summit School.

42. Defendants violated 20 U.S.C. § 1400(c) of the IDEA which mandates states and local agencies (here, the School

District) to assure that all children with disabilities have available to them a free appropriate public education ("FAPE") until they become 21 years old.

43. A FAPE under the IDEA for an emotionally disturbed child such as Rebecca necessarily includes a free psychiatric evaluation and transitional services, including vocational assessments and psychological counseling services, in order to succeed after graduating from high school.

44. Defendants' refusal to provide Rebecca with a free psychiatric evaluation made it impossible for her to receive an appropriate transitional plan, including an appropriate vocational assessment because of the missing psychiatric evaluation.

45. Defendants attempted to unlawfully shift the burden upon the plaintiffs by requiring the Papes to pay VESID for the psychiatric evaluation, vocational counseling, and psychological evaluation, and transitional services.

46. Defendants' failure or refusal to commence a timely due process hearing deprived the plaintiffs, in particular, Rebecca, of a meaningful due process hearing and violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and § 1983.

47. Rebecca had to leave college after attending classes for only three weeks. She was not equipped to survive the rigors of a college environment, because since she was denied a psychiatric evaluation prior to her high school graduation; she was lacking the transitional services, and psychological and vocational counseling necessary to support her academic goals.

48. Rebecca suffers diminished earnings because she is unable to work on a full-time basis due to defendant's failure to provide vocational counseling services which would have given her the necessary guidance to compete in the shrinking job market, and psychological counseling that could have prepared her to be engaging enough to work along other individuals.

49. Rebecca requires compensatory damages in the sum of Fifteen Million Dollars ($15,000,000) to make her whole. She may require both psychiatric care and psychological counseling services for an indefinite period of time due to the school district's reckless disregard for her known condition which required the services that her parents requested time and again over a ten year period.

50. The plaintiffs have suffered tremendous pain and humiliation caused by the defendants' retaliatory actions against them, which were all based on the defendant's discriminatory animus against Rebecca for her emotional

disturbance, thus causing a devastating effect on her academic development and future professional opportunities.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief as follows:

(1) That the Court determine and enter judgment declaring that the plaintiffs exhausted their administrative remedies under the IDEA, and may sue the defendants under § 504, the ADA, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment and § 1983;

(2) That the Court determine and enter judgment declaring that the plaintiffs invoked the IDEA's due process procedures by filing a written request to the defendants for an impartial hearing on or about January 2003, and duly served upon the defendants at that time;

(3) That the Court determine and enter judgment declaring that the defendants violated the following mandatory provisions:

> (a) 20 U.S.C. § 1415(J), the IDEA's mandatory stay-put provision, by graduating Rebecca and cutting off federal funds for her special education program on about June 2003 while the IHO decision was still pending;

(b) 34 C.F.R. § 300.511(a)(1) and (2) by disregarding the IDEA's clear mandate that state and local agencies (here, the School District), ensure that not later than 45 days after the receipt of a request for a hearing a final decision is reached in the hearing and a copy of the decision is mailed to each of the parties; that her exclusion from the School District's special education program during her pendency placement prior to her 21st birthday violated § 504 and the ADA;

(2  That the Court determine and enter judgment declaring that the Papes have standing as non-disabled individuals to sue the defendants under the anti-retaliation regulation set forth in 34 C.F.R. § 100.7(e), because of retaliation against them personally for their attempts to vindicate the rights of Rebecca, their disabled child;

(3) That the Court award the plaintiffs compensatory damages in the sum of Fifteen Million Dollars (15,000,000);

(4) That the Court award punitive damages to plaintiffs;

(5) That the defendants be required to pay the legal costs and expenses herein, including reasonable provision for plaintiffs' attorney fees;

(6)     That the Court grant such further and additional relief as the Court may deems just and equitable.

PLAINTIFFS DEMAND A JURY TRAIL

Dated:  June 30, 2008
        Bronx, New York

                              Respectfully submitted,

                              Ben M. Arai (BA-1969)
                              1175 Forest Avenue, Suite 3
                              Bronx, New York 10456
                              (718)378-6527